440

North Pier Terminal Company, for Use of Liberty Mutual Insurance Company, Appellee, v. Hoskins Coal and Dock Corporation, Appellant.

Gen. No. 43,931.

Opinion filed February 17, 1948. Released for publication March 9, 1948.

MILLER, GORHAM, WESCOTT & ADAMS, of Chicago, for appellant; EDWARD R. ADAMS and HERBERT C. DE-YOUNG, both of Chicago, of counsel.

D'ISA & ARPAIA, of Chicago, for appellee; EZRA L. D'ISA, of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Defendant appeals from an adverse judgment for $2,408.22 entered upon the verdict of the jury.

The complaint alleged that on June 22, 1941, North Pier Terminal Company (hereinafter referred to as the terminal company) was engaged in the business of warehousing and stevedoring in Chicago and vicinity; that it had in its employ as a longshoreman one Robert Dunkel; that about 9:30 p. m. on the day in question the defendant, Hoskins Coal and Dock Corporation, had one of its barges stationed and working alongside the scene of operations in which Dunkel was engaged; and that throughout all the occurrences alleged, Dunkel and the terminal company were in the exercise of due care and caution for the safety of all concerned. It is further alleged that defendant was operating a crane on its barge and was engaged in lifting silica sand out of the barge and swinging it over and loading it on an adjoining ship; that the crane and barge were under the exclusive control of the defendant, which maintained, operated and controlled the crane; and that suddenly and without warning, through the negligence and carelessness of the defendant, the crane was caused to and did topple over backwards, thereby proximately causing Dunkel's injury and resulting death.

It is further alleged that there was then in full force and effect a Federal statute known as the Longshoremen's and Harbor Workers' Compensation Act (33 USCA ch. 18); that both Dunkel and the terminal company were operating under and subject to the terms and provisions of that act; that by virtue thereof the terminal company became liable for payment of death benefits under the terms of the act; that prior thereto and effective at the time of the accident the Liberty

Mutual Insurance Company had issued its policy of insurance to the terminal company covering the latter's liability under the act; that in pursuance of said policy and in accordance with the act the terminal company was compelled to and did expend large sums of money in payment of death benefits; that by virtue of its policy of insurance and under title 33 of the act the Liberty Mutual Insurance Company has become subrogated to all the rights of the terminal company; that the Liberty Mutual Insurance Company was in the exercise of all due care and caution for the safety of all concerned; and that in addition to the death benefits other expenses in the nature of attorneys' fees and costs had been expended in the matter. A motion to dismiss the complaint on the ground that no cause of action against defendant was shown, was overruled, and after the verdict motions of defendant for judgment notwithstanding the verdict and for a new trial were likewise overruled.

The accident occurred upon the navigable waters of the Chicago river. Only two witnesses testified to the occurrence itself. At the time of the accident three sand barges were lashed alongside a dock on the north side of the river. Lashed to the south side of one of these was a crane barge which had been brought there by the defendant. Next to this barge, on its south, there was lashed to it, or to the dock, a ship. The crane on the barge was being used to load sand from the sand barges to the ship. The only employee of the defendant present was the operator of the crane. Decedent was an employee of the terminal company who signaled the crane operator in his work. The crane was placed on the barge in the usual and customary manner. It was on a caterpillar tractor base and the tractor had been run onto the barge, its tractors blocked and locked. This was the usual and customary manner of placing cranes on crane barges. Shortly before the decedent was discovered dead, the arm of the bucket attached to the crane had broken. The

crane operator had stopped the crane while it was in the air at about a 65-degree angle. The bucket was on the deck of the barge, some 15 feet away from the caterpillar tractor. The crane operator jumped out of his cab to fix the arm of the bucket. The barge began to rock from the waves of a passing boat and the crane tipped over backwards, sliding the bucket along the deck toward the base of the crane tractor. At some time before the crane tipped over, the decedent had been standing near the bucket. None of the witnesses saw the decedent for two or three minutes after the crane tipped over, at which time he was discovered wedged in between the ship and the crane barge, with his hands and head on the barge. He was killed almost instantly.

■■ The case proceeded to trial on the theory that the facts were sufficient to invoke the doctrine of *res ipsa loquitur*. Under that doctrine "whenever a thing which produced an injury is shown to have been under the control and management of the defendant and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of injury itself will be deemed to afford *prima facie* evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care." *Bollenbach v. Bloomenthal,* 341 Ill. 539. Defendant introduced no evidence whatever, nor did it make any attempt to overcome or rebut the presumption or inference of negligence raised by the application of this doctrine. In the absence of an explanation by the party charged, it therefore became a question of fact for the jury to determine whether the accident was proximately caused through the negligence of defendant. *Bollenbach v. Bloomenthal, supra,* and *Styburski v. Riverview Park Co.,* 298 Ill. App. 1.

The principal legal question presented is whether payment of death compensation under the Longshoremen's and Harbor Workers' Compensation Act trans-

ferred to the employer the right to sue the negligent third party under the Illinois Wrongful Death statute (Ill. Rev. Stat. 1947, ch. 70, secs. 1 and 2 [Jones Ill. Stats. Ann. 38.01, 38.02]). Plaintiffs paid compensation to the widow of the decedent pursuant to the provisions of the Longshoremen's Act, and they claim that by virtue of that act they are entitled to recover from the defendant the compensation paid. The salient provisions of section 33 of the act are as follows:

"(a) If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer is liable in damages, he may elect, by giving notice to the deputy commissioner in such manner as the commission may provide, to receive such compensation or to recover damages against such third person.

"(b) Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person.

"(c) The payment of such compensation into the fund established in section 944 of this chapter shall operate as an assignment to the employer of all right of the legal representative of the deceased (hereinafter referred to as 'representative') to recover damages against such third person, whether or not the representative has notified the deputy commissioner of his election.

"(d) Such employer on account of such assignment may either institute proceedings for the recovery of such damages or may compromise with such third person either without or after instituting such proceeding.

"(e) Any amount recovered by such employer on account of such assignment, whether or not as the result of a compromise, shall be distributed as follows:

[setting forth the amount to be retained by the employer for expenses, attorneys' fees, cost of benefits actually furnished to the employee and the amounts of compensation paid]."

Plaintiffs contend that the provisions of section 33 of the Longshoremen's Act transferred to the employer who has paid compensation thereunder all rights of action possessed by the personal representative of the deceased to the extent of the compensation paid, and they rely principally on *Aetna Life Ins. Co. v. Moses,* 287 U. S. 530, in support of this proposition. In that case one Roberts, an employee of plaintiff, was killed in the course of his employment by the alleged negligence of the defendant. His widow, who was also his administratrix, claimed and had accepted an award of compensation under the Longshoremen's Act, made applicable as a workmen's compensation law in the District of Columbia by statute (c. 612, 45 Stat. 600). The award directed the employer and the Aetna Life Insurance Company, his insurer, to pay compensation to the widow in periodic instalments and the expenses attendant upon the burial of the deceased. Suit was brought in the Supreme Court of the District of Columbia on the theory that the acceptance of compensation awarded under the statute operated as an assignment of the administratrix's right to pursue the respondent, the defendant, for damages for the wrongful death, and that the insurer succeeded to that right by subrogation. Defendant moved to strike the declaration for misjoinder of parties plaintiff and causes of action. The trial court sustained the motion on the first ground, and since plaintiffs elected to stand on the declaration, gave judgment for defendant, which the Court of Appeals affirmed. On *certiorari* granted, the Supreme Court of the United States held that under the Longshoremen's Act, made applicable to the District of Columbia as a workmen's compensation law, where an employee is killed in the course of his

employment by the negligence of a stranger and the administratrix, being also the sole beneficiary, accepts compensation, there is an implied statutory assignment to the employer of her cause of action for the negligence under the District death statute. MR. JUSTICE STONE, speaking for the court, said that in cases where the employee survives and accepts compensation as the only person entitled thereto, it is clear that the statutory assignment vests in the employer the full right to recover damages from the third person, and concluded that in view of that provision and the general purpose which the act discloses with respect to rights of recovery when the injury does not result in death, "we see no escape from the conclusion that the statute contemplates that the employer is to have the same control over the institution of an action for wrongful death, the compromise and settlement of the claim, and the distribution of the proceeds, as he is given in unambiguous language in the case where the injury results only in disability. What is made explicit by the statute with respect to the latter is implicit with respect to the former. For if it had been intended that the employer should assert only a part of the action for wrongful death, proportionate to the interest of those who are dependents under the Compensation Act, compare *Zirpola v. T. & E. Casselman*, 237 N. Y. 367, 143 N. E. 222; *United States Fidelity & Guaranty Co. v. Graham & Norton Co.*, 254 N. Y. 50, 171 N. E. 903, there would be no meaning to the language of § 33 (2) directing him to pay to the personal representative from the proceeds of the action any excess over the compensation award."

Plaintiffs cite *Aetna Life Ins. Co. v. Moses* and other decisions (*Stoutenburgh v. Hennick*, 129 U. S. 141; *Metropolitan R. Co. v. District of Columbia*, 132 U. S. 1; *Paxos v. Jarka Corp.*, 314 Pa. 148, 171 Atl. 468; *Lumbermen's Mut. Casualty Co. of Illinois v. Lowe*, 5 F. Supp. 447, aff'd 70 F. (2d) 616; *Moore v. Christien-*

*sen S. S. Co.,* 53 F. (2d) 299, and *Doleman v. Levine,* 295 U. S. 221) to show the status of the District of Columbia in our Federal set-up, and the effect of the Longshoremen's Act on the provisions of the Illinois Wrongful death statute. It is argued (1) that the District of Columbia, in so far as its local laws are concerned, is as much a State as Illinois and (2) that the Federal act does not alter any of the other provisions of the Illinois death statute. We do not consider it necessary to dwell upon or decide this contention because *Doleman v. Levine* (also written by Mr. JUSTICE STONE), which followed *Aetna Life Ins. Co. v. Moses* by only two years and upon which plaintiffs also rely, holds that even if the accident had arisen in the District of Columbia and the suit brought under the Death Act provided for that district, nevertheless the employer could not sue in his own name unless all of those entitled to receive the benefits of the Death Act had received compensation under the Longshoremen's Act. The facts in the *Doleman* case disclose that the dependent, the widow, who had elected to receive compensation, was entitled to only a partial interest in the amount to be recovered for the death, it appearing that although there was no surviving child or children, the proceeds of the recovery were required to be distributed among the next of kin, which included both the widow and the father of decedent. Upon that state of the record the court held as follows: "We conclude that where the employer is given anything to recover by a suit brought directly against the wrongdoer, it is the full recovery to which the injured employee or his personal representative would be entitled. See *Aetna Life Ins. Co. v. Moses, supra,* 540. But where the right of the dependent, to which the employer is subrogated by § 33 (b), is only to a share of the proceeds of the recovery, the employer is not authorized to maintain the action for wrongful death. As statutory assignee of the rights of the dependent receiving

compensation, he acquires only the rights of his assignor to compel the executor or administrator, by appropriate proceedings, to maintain the suit and to share in the proceeds of the recovery." A like construction has been given to the similar but not identical compensation statute of New York. If the persons receiving compensation do not include all of the next of kin who are beneficiaries under the Wrongful Death Act, the employer or insurance carrier must prosecute his claim to share in the proceeds through the administrator as statutory trustee, and may compromise or release its own interest, but no other. *United States Fidelity & Guaranty Co. v. Graham & Norton Co.*, 254 N. Y. 50, 171 N. E. 903; *Zirpola v. T. & E. Casselman*, 237 N. Y. 367, 143 N. E. 222. But if dependents, electing to assign, are the only next of kin, the entire beneficial interest in the cause of action against the wrongdoer will pass by their assignment to the carrier, who may sue or compromise at will. See *Zirpola v. T. & E. Casselman, Inc., supra,* and *Travelers' Ins. Co. v. Louis Padula Co.*, 224 N. Y. 397, 121 N. E. 348.

█ This brings us to a consideration of defendant's third contention, that no cause of action is stated in the complaint. Its counsel argue that even if we should hold that an employer, having paid compensation, could sue under the Illinois Wrongful Death Act, nevertheless no such suit was here brought because the complaint fails to show survival of the widow or next of kin. It seems to us that this omission is fatal to plaintiffs' case. Plaintiffs claim damages only for loss suffered by them because they became liable for compensation; nowhere in the complaint is it alleged that Dunkel is survived by a widow or next of kin; the widow, children if any, or next of kin, are not even mentioned in the complaint. Because of these omissions it is impossible to ascertain who the dependents were to whom the employer claims to have become subrogated by § 33 (b) and whether such dependent or dependents include all of the next of kin who might

have been beneficiaries under the Wrongful Death Act. The Longshoremen's Act does not create a cause of action for wrongful death. As stated in *Doleman v. Levine,* "where the right assigned to the employer is to receive a part only of the proceeds of recovery for the wrongful death, the language [§ 33 (b)] falls short of conferring upon him authority to compromise or sue upon claims which 'such assignment' does not operate to transfer. This conclusion is supported, if not compelled, by the clause of § 33 (a), which authorizes a dependent of the deceased employee to elect whether to receive compensation or to recover damages against a third person, and by § 33 (e), which gives to the employer as indemnity the full benefit of 'any amount recovered' by him, before turning over the balance to the personal representative of the deceased. There may be next of kin of the decedent entitled to share in the recovery for wrongful death who are not entitled to compensation, and others who elect, as provided in § 33 (a) to take their share of the recovery for wrongful death instead of compensation. A construction of § 33 which would require the use of their shares to indemnify the employer, for payments to others who have elected to receive compensation, is not to be favored in the absence of language plainly requiring it."

Since we hold that the complaint is fatally defective in the particulars indicated, it was error for the court to overrule the motion to dismiss the complaint, or failing in that regard, it was error not to direct a verdict for the defendant, or to enter judgment for the defendant notwithstanding a verdict for the plaintiffs. Accordingly the judgment of the superior court is reversed and the cause is remanded with directions to enter judgment for defendant notwithstanding the verdict, at plaintiffs' costs.

*Judgment reversed and cause remanded with directions.*

SCANLAN and SULLIVAN, JJ., concur.